UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
OCT 24 2002
AT ____ O'CLOCK
Lawrence K. Baerman, Clerk - Syracuse

J.C. PENNEY CORPORATION, INC.,

PLAINTIFF,

v.

CAROUSEL CENTER COMPANY, L.P.,

DEFENDANT.

COMPLAINT

Civil No: 5:02-CV-1360 DEP

Plaintiff J.C. Penney Corporation, Inc. ("JCPenney"), by its attorneys, Harter, Secrest & Emery LLP, for its complaint against the Defendant Carousel Center Company, L.P., states as follows:

## PRELIMINARY STATEMENT

1. Since 1990, JCPenney has been a tenant in the Carousel Center Mall (the "Mall") in Syracuse, New York, pursuant to a lease originally entered into with Pyramid Company of Onondaga ("Pyramid"). Defendant Carousel Center Company, L.P. is the successor in interest to Pyramid at the Mall. JCPenney's lease limits the landlord's expansion rights to those reserved for expansion on the Mall's site plan.

2. In violation of the lease with JCPenney, Defendant is in the process of commencing a massive renovation and expansion of the Mall – including construction of a hotel and/or parking decks – without obtaining JCPenney's consent. Defendant's alteration of the Mall will cause immediate irreparable harm to JCPenney's ongoing business at the Mall and in the Syracuse metropolitan area.

3. Accordingly, JCPenney brings this action to enjoin Defendant's continued violation of the lease and for resulting damages therefrom.

## PARTIES

4. JCPenney is a Delaware corporation with its principal place of business at 6501 Legacy Drive, Plano, Texas 75024. JCPenney is an anchor tenant of the Mall. JCPenney is authorized to conduct business in the State of New York.

5. Defendant Carousel Center Company, L.P. ("Carousel" or "Defendant") is, upon information and belief, a New York limited partnership with its principal place of business at The Clinton Exchange, 4 Clinton Square, Syracuse, New York. Carousel is the current operator of the Mall. Carousel became the Mall operator in 1995 as a result of an assignment from Pyramid, the Mall's developer. Pyramid, upon information and belief, is a New York general partnership and is the limited partner of Carousel owning ninety-eight percent (98%) of Carousel. Upon information and belief, the general partner of Carousel is Carousel General Company, L.L.C., a New York limited liability corporation, which owns 2% of Carousel.

## JURISDICTION AND VENUE

6. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a)(1). This action seeks injunctive relief to protect, among other things, the ongoing business of JCPenney's store at Carousel Center Mall which has a value well in excess of $75,000. JCPenney seeks to recover monetary damages in excess of $75,000, exclusive of costs and interest. This civil action is between Plaintiff JCPenney, deemed a citizen of Texas and Delaware, and Defendant Carousel, deemed a citizen of New York State.

7. Venue is appropriate for this action in the Northern District of New York pursuant to 28 U.S.C. § 1391 because Defendant Carousel is a resident of the District and a substantial part of the events giving rise to these claims occurred in the District.

## FACTUAL BACKGROUND

*(i) 1990 Lease between Pyramid and JCPenney*

8. In the late 1980's, as Pyramid developed the Mall, Pyramid sought to obtain JCPenney as a Mall anchor tenant. On January 10, 1990, Pyramid entered into a 25 year lease with JCPenney. The lease subsequently was amended and/or supplemented by a Term Agreement dated June 10, 1991, a First Amendment of Lease dated October 8, 1993, and a Second Amendment of Lease dated August 30, 1995 (collectively, the "Lease"). A true and correct copy of the Lease, as amended (with the Rent Rider and other specific cost calculations redacted), is attached hereto as Exhibit A. Attached to the Lease as Exhibit B is a site plan (the "Site Plan"), identifying each building and improvement found at the Mall, including future expansion areas, as amended in 1995.

9. Under the terms of the Lease, JCPenney leased an area of 161,985 square feet for operation of a retail department store for a twenty-five (25) year term beginning October 15, 1990, with six (6) options to renew for an additional total of thirty years. With options, JCPenney has the right to extend its tenancy until November, 2045.

10. Carousel expressly assumed the obligations of Pyramid under the Lease as of October 17, 1995.

11. In the Lease, Pyramid covenanted with JCPenney to restrict its expansion and construction to areas specifically reserved for same on the Site Plan, and provided in part as follows:

> Without the prior approval of Tenant there shall not be constructed within any part of the Entire Premises [the entire Mall property] (1) any facilities for the parking of motor vehicles other than at ground level in the

> locations shown therefor on Exhibit B hereto; (2) any building or structure except within the building areas shown on said Exhibit B; or (3) any improvements, or any replacements of, or alterations or additions to, existing improvements which do not conform in general exterior architectural treatment (including the appearance of construction material used) to the other portions of the Shopping Center or, in the case of the replacement of an improvement, to the improvement which is being replaced.

Lease, Exhibit A ("ADDITIONAL COVENANTS OF LANDLORD") at 45.

12. Pyramid further agreed in the Lease that:

> Tenant shall have the right of reasonable approval with respect to the Entire Premises, of:
>
> (a) any change from the plot plan in the layout and detail of the parking area and other Common Facilities adjacent thereto;
>
> (b) traffic signs, road markings and signalization, all of which will be initially designed in accordance with local and state requirements or the Manual on Uniform Traffic Control Devises[*sic.*];
>
> (c) the design criteria and specifications for all on-site and off-site improvements, including but not limited to grading, drainage, utilities, landscaping and irrigation therefor, paving, lighting, striping, curbs, and signing:
>
> (d) the design of the JCP Mall Court and adjoining Enclosed Mall for a distance of 150' from JCP Mall Entrance, including but not limited to dimensions, ceiling heights, decor, lighting, clerestories, skylights, finish materials, location and design of planters and fountains, ornamental furnishings, benches, stairways, elevators, escalators, kiosks, and columns;
>
> (e) screening of all grade-level equipment and service areas, visible roof-mounted equipment, vents, etc.; and
>
> (f) all mall building exteriors and exterior appurtenances except for Major Store Buildings.

Lease, Exhibit A at Exhibit E ("GENERAL NOTES") at (i).

13. The Lease confirmed that the proposed Mall configuration was an "inducement" to JCPenney entering into the Lease with Pyramid:

> As an inducement to Tenant to enter into this lease, Landlord covenants and represents that upon completion of the buildings, improvements and the Common Facilities to be constructed upon the Entire Premises, such buildings, improvements and Common Facilities shall remain substantially as shown on Exhibit B hereto during the term of this lease and that Landlord will not expand any existing building or erect any new building except within the areas shown on said Exhibit B as being reserved for the expansion or construction of buildings.

Lease, Exhibit A ("SHOPPING CENTER ENTITY") at 26.

14. These Lease provisions as well as other Lease provisions, including rights relating to signage, shopping center name and parking ratio, among others (referred to collectively as the "Consent Provisions"), are vital to JCPenney. With these provisions, JCPenney was assured that it would always know the size, configuration, and character of the Mall to which it was asked to commit and in which to invest. But for Pyramid's agreement to include these provisions in the Lease, JCPenney would not have agreed to invest millions of dollars to locate a store at the Mall.

15. The location of a store at the Mall was part of JCPenney's overall plan for a presence in the Syracuse metropolitan area.

16. The configuration of the Mall as shown on the Site Plan (Exhibit B) and the operation of the Mall in accordance with the Lease Agreement (Exhibit A) were not only essential to JCPenney's decision to locate at the Mall but continue to be essential to the protection of its business operations.

*(ii) "DestiNY USA" Project*

17. In 2000-2001, Pyramid announced its intention to expand the Mall to approximately three times its present size, a plan which became known as the "DestiNY USA Project" ("DestiNY USA").

18. In May, 2000, Pyramid formally requested that the City of Syracuse Industrial Development Agency ("SIDA") assist in undertaking the project, which would require SIDA to acquire up to 140 acres of land surrounding the existing Mall.

19. Upon information and belief, some time in 2002, Defendant and Pyramid requested that SIDA take action to condemn or "take" all or some of the provisions of Mall tenant's leases that required Defendant Carousel to consult with and obtain the consent of the Mall's tenants to any changes in the configuration and operations of the existing Mall. These rights included the various Consent Provisions of the JCPenney Lease referenced above.

20. The request was made by Defendant Carousel and Pyramid in order to circumvent and nullify the promises made by them in the Consent Provisions to JCPenney.

21. On April 30, 2002, SIDA adopted a resolution pursuant to Eminent Domain Procedure Law § 204 which allegedly made various findings concerning public use, benefit or purpose, the approximate location of the proposed project, and the general effect of the proposed project. SIDA indicated its intention to condemn any portion of any Mall tenant's lease which would restrict construction of the DestiNY USA project, including any modifications to the Mall.

22. On or about May 30, 2002, JCPenney commenced an original proceeding in the New York State Supreme Court, Appellate Division, Fourth Department under EDPL § 207 requesting that the Court reject SIDA's April 30th Resolution. JCPenney's Petition alleged among other things, that SIDA's April 30th Resolution was not in conformity with the federal and state constitutions, that the proposed acquisition was not within SIDA's statutory authority, that the April 30th Resolution was not made in accordance with Article 8 of the Environmental Conservation Law and that a public use, benefit or purpose would not be served by the proposed

acquisition. The Appellate Division, Fourth Department heard oral argument on JCPenney's Petition on October 21, 2002. The parties are awaiting a determination.

23. SIDA's April 30th Resolution by itself does not constitute a taking or acquisition of any property including the Consent Provisions of the JCPenney lease. SIDA will not acquire such property (if at all) until such time as (i) it has filed an acquisition map, (ii) served and filed a notice of petition and petition to confirm such map, (iii) a hearing has been held on such petition and (iv) an order issued granting such petition by the Supreme Court, Onondaga County. EDPL § 402(B)(5) provides: "[u]pon the filing of the order and the acquisition map, the acquisition of the property in such map shall be complete and title to such property shall then be vested in the condemnor."

24. An order pursuant to EDPL § 402(B)(5) has not been entered.

25. SIDA has not acquired any of the Consent Provisions with respect to the JCPenney Lease.

26. Defendant Carousel is therefore still bound by the Consent Provisions contained in JCPenney's Lease.

27. On or about October 22, 2002, Defendant and Pyramid announced their plans to begin construction of the first part of DestiNY USA after a groundbreaking ceremony on October 24, 2002. Upon information and belief, Defendant Carousel and Pyramid are in the process of commencing the construction of DestiNY USA by constructing a hotel and four-story parking deck for operation of a 47 story hotel on the Mall site. During the construction, the required parking ratio of 4.5 spaces for each 1000 square feet of floor area at the Mall will not be maintained as required under the terms of the Lease. This activity negatively affects access to the Mall and its traffic plan. Also, upon information and belief, Carousel is granting easements

to other property in violation of the Lease. Moreover, conducting this construction during the crucial 2002 holiday shopping season will dramatically and negatively impact Mall sales.

28. The DestiNY USA design, on information and belief, will substantially impair the visibility of the JCPenney store, funnel pedestrian and other traffic away from, and reduce access to, the JCPenney store, increase the common facilities of the Mall, create recreational and other uses which may be inconsistent with the operations of JCPenney at the Mall, diminish the convenience of the Mall as a shopping destination and cause a resulting loss of customer traffic, visibility and sales at the JCPenney store.

29. The DestiNY USA expansion will become part of the Mall, enveloping and dwarfing the Mall, which was never contemplated in the Lease and is a clear violation of the Lease.

30. The total potential harm to the ongoing business of JCPenney and the loss of goodwill is well in excess of $75,000 and would cause irreparable harm to the JCPenney store at the Mall and JCPenney's market presence in the greater Syracuse metropolitan area which harm cannot be compensated by monetary damages alone.

31. Beginning in or about May, 2001, and continuing through October, 2002, JCPenney notified Carousel as well as Pyramid that JCPenney had not consented to the expansion of the Mall unless and would not grant such consent until such time as Defendant and JCPenney reached agreement as to terms upon which JCPenney could consent to the expansion plan.

32. At no time has Carousel or Pyramid received JCPenney's approval for the proposed expansion of the Mall, which expansion is outside the permissible building area

permitted under the Lease and is otherwise in violation of the Site Plan and other Lease provisions.

33. In late September, 2002, JCPenney again notified Carousel and Pyramid by letter of its approval rights pursuant to the Lease and demanded that the parties not proceed with construction. In response, Pyramid assured JCPenney that it had not commenced construction and would remove temporary fencing at the Mall during the holiday shopping season.

34. On information and belief, Carousel and Pyramid are proceeding with construction despite JCPenney's demands to cease, and Defendant's earlier representations otherwise. The initial construction will occur during the Mall's busy holiday season, creating the potential for additional harm.

**AS AND FOR A FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT: SPECIFIC PERFORMANCE AND INJUNCTIVE RELIEF**

35. By its actions described above, Defendant Carousel has breached the articles of the Lease including, without limitation, sections entitled "Additional Covenants of Landlord," "General Notes" and "Shopping Center Entity." These sections explicitly require the Landlord to obtain JCPenney's approval before making any expansions at the Mall that are not designated on the Site Plan as future expansion areas, and not to change common facilities (including but not limited to parking) without JCPenney's consent.

36. Defendant has also breached its implied covenant of good faith and the specific provisions of the Lease by requesting and procuring the commencement of an eminent domain proceeding by SIDA to extinguish the agreed to Consent Provisions of the Lease.

37. Unless Defendant is compelled to honor its contractual obligations with JCPenney, JCPenney will suffer substantial and irreparable injury to its ongoing business operations including, among other things:

(i) loss of visibility and access with respect to the JCPenney store;

(ii) loss of goodwill and interference with customer relationships;

(iii) loss of business opportunity including loss of sales;

(iv) diminution of JCPenney's premier location and presence at the Mall;

(v) damage to JCPenney's presence in the Syracuse metropolitan area;

(vi) loss of vital parking places during the upcoming holiday shopping season by construction activities in the parking lot areas with respect to the Mall; and

(vii) other incalculable future damages.

38. In addition, under recent New York case law, the construction of substantial portions of a project may render "moot" any challenge claim with respect to such a project. If substantial portions of the DestiNY USA project are constructed during the pendency of this action, many of JCPenney's claims with respect to the enforcement of Consent Provisions, and breach of contract, may be rendered moot.

39. If Defendant Carousel is allowed to proceed with the commencement of construction of the DestiNY USA project, JCPenney will suffer immediate and irreparable harm for which there is no adequate remedy at law.

40. JCPenney is therefore entitled to an injunction enjoining any construction of the DestiNY USA project which is inconsistent with its rights granted under the Lease unless and until JCPenney consents to such modifications in accordance with the Lease.

41. There has been no prior request for the relief sought herein.

**AS AND FOR A SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT: MONETARY DAMAGES**

42. JCPenney repeats and realleges the allegations contained in paragraphs 1 through 41 above.

43. The actions taken by Defendant Carousel to request and procure the acquisition by SIDA of the Consent Provisions constitutes a violation of the implied covenant of good faith with respect to the Lease and a violation of provisions of the Lease.

44. Carousel's construction of the DestiNY USA project without obtaining the consent of JCPenney as provided for in the Lease constitutes a breach of contract.

45. The breach of the Lease by Carousel is willful and substantial.

46. The damages caused by such breach of contract include damage to the ongoing business operations of JCPenney at the Mall and in the Syracuse metropolitan area.

47. Carousel's breach of the Lease has also resulted in JCPenney's incurring substantial legal expense with respect to prosecuting a proceeding pursuant to EDPL § 207 and otherwise being required to take legal actions to protect and defend its rights.

48. In addition to various injuries that are not adequately addressed by monetary compensation, Defendant Carousel's breach of the Lease has caused damage to JCPenney in a dollar amount in excess of $75,000.

49. Based upon the foregoing, JCPenney is entitled to damages for breach of contract against Carousel in an amount in excess of $75,000, exclusive of interest and costs, and other relief based on the substantial nature of the breach.

**WHEREFORE**, JCPenney respectfully requests that this Court issue an order and judgment as follows:

a. granting a preliminary and/or permanent injunction against the Defendant Carousel from proceeding with construction of the proposed DestiNY USA project and the expansion of the Mall not identified in the Site Plan attached to the Lease and requiring Defendant Carousel to remove any portion of any building, structure, hotel or parking deck presently under construction and restoring the Mall to its original condition prior to the time of such construction;

b. awarding JCPenney damages with respect to its claim for breach of contract in an amount in excess of $75,000, exclusive of costs and interest;

c. granting such other incidental and consequential damages as may be proved in this proceeding; and

d. granting such other and further relief as the Court deems just and proper.

DATED: Rochester, New York
October 24, 2002

Respectfully submitted,

HARTER, SECREST & EMERY LLP

By: [signature]

Edward F. Premo, II, Esq., of Counsel
Bar Roll No. 501487
*Attorneys for Plaintiff*
*J.C. Penney Corporation, Inc.*
1600 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 232-6500
Facsimile: (585) 232-2152