IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

J.C. PENNEY CORPORATION, INC.,

                Plaintiff,

                                    Civ. Action No.
                                    5:02-CV-1360 (HGM/DEP)

     vs.

CAROUSEL CENTER COMPANY LP,

                Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

HARTER, SECREST LAW FIRM      EDWARD F. PREMO, ESQ.
1600 Bausch & Lomb Place         KIMBERLY I. SHIMOMURA,
Rochester, New York 14604-2711   ESQ.

J.C. PENNEY CORPORATION, INC.  CELESTE D. FLIPPEN, ESQ.
6501 Legacy Drive
Plano, TX 75024-3698

FOR DEFENDANT:

DEVORSETZ, STINZIANO LAW FIRM KEVIN C. MURPHY, ESQ.
555 East Genesee Street         TIMOTHY LAMBRECHT, ESQ.
Syracuse, NY 13202-2159

FOR SUBPOENAED THIRD-PARTY:

HISCOCK & BARCLAY, LLP          MARK R. McNAMARA, ESQ.
Financial Plaza                EMANUELA D'AMBROGIO, ESQ.
PO Box 4878
Syracuse, New York 13221

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER

This action stems from plans on the part of a local commercial developer to expand the Carousel Center Mall, an enclosed retail shopping mall located in Syracuse, New York. Plaintiff J.C. Penney Corporation, Inc. ("JCPenney"), a mall tenant, has commenced this action against defendant Carousel Center Company, Inc. ("CCC"), its landlord, alleging that the proposed expansion would violate certain terms of its lease agreement which restrict future expansion of, and construction at, the mall without tenant approval.

In response to a non-party subpoena seeking documents associated with the project, the subpoenaed party, Hiscock & Barclay, LLP ("H&B") – a law firm which represents the Syracuse Industrial Development Agency ("SIDA") – has withheld four documents, properly identified and described on a privilege log, under a claim that those documents are subject to

2

attorney-client privilege.[1]  H&B's refusal to disclose the disputed documents has resulted in an application by the plaintiff for enforcement of the subpoena.

Having considered carefully the arguments presented in support of an opposition to plaintiff's application, and reviewed the disputed documents *in camera*, I find that the subpoenaed party has not sustained its burden of demonstrating that the documents in question are subject to an attorney-client privilege, and additionally that in any event that privilege has been waived as a result of the voluntary disclosure of those documents to one or more third parties.  Accordingly, plaintiff's motion to compel production of the disputed documents will be granted.

I.    <u>BACKGROUND</u>[2]

During the late 1980s Pyramid Company of Onondaga ("Pyramid"), a general partnership operated under New York law and headquartered in Syracuse, New York, undertook development of a large, indoor shopping mall facility in the Syracuse metropolitan area.  That facility was ultimately

---

[1]    While there were originally five documents in dispute, the subpoenaed party has since reconsidered its position with regard to one, and has provided that document to plaintiff's counsel.

[2]    The following recitation of facts is derived primarily from plaintiff's amended complaint, as well as the parties' submissions in connection with the pending motion.

completed and opened, and operates as the Carousel Center Mall.

Following negotiations undertaken with an aim to secure its presence as an anchor tenant for the facility, on January 10, 1990 JCPenney entered into a twenty-five year lease with Pyramid for occupation of a space with an area of 161,985 square feet within the Carousel Center Mall, to be operated as a retail department store.  That lease, as amended and/or supplemented by agreements entered into in June of 1991, October 8, 1993, and August 30, 1995, provided for an initial term of twenty-five years with various renewal options under which JCPenney could extend its right to occupy the leased mall space until November, 2045.  That lease remains in effect, although since 1995 CCC, a Pyramid affiliate, has operated the Mall and assumed Pyramid's obligations under the lease.

The lease between CCC and JCPenney contains several provisions which, according to JCPenney, were influential in its decision to enter into the lease, and remain "vital" to its operations.  Addressing future expansion and construction at the Mall, the lease provides that

> [w]ithout the prior approval of Tenant there shall
> not be constructed within any part of the [entire
> Mall property] (1) any facilities for the parking of
> motor vehicles other than at ground level in the

4

> locations shown therefor on Exhibit B hereto; (2)
> any building or structure except within the building
> areas shown on said Exhibit B; or (3) any
> improvements, or any replacements of, or
> alterations or additions to, existing improvements
> which do not conform in general exterior
> architectural treatment (including the appearance
> of construction material used) to the other portions
> of the Shopping Center or, in the case of the
> replacement of an improvement, to the
> improvement which is being replaced.

Amended Complaint (Dkt. No. 13) Exh. A, at 45.  That agreement also
reserved to JCPenney, as lessee, the right of "reasonable approval" with
regard to variation of certain physical attributes, including changes in the
plot plan, parking area configurations, signage, and other similar features
of the Mall.  *E.g.*, *id.*, at 39-40.

Plans for DestiNY USA, a large project contemplated by Pyramid to
include hotels, shops, and recreational facilities, with a corresponding
expansion of the Carousel Center Mall, were announced by Pyramid and
Carousel sometime beginning in or about 2000.  A request was made by
the project developers to SIDA to assist in the project, including
condemning land adjacent to the existing Mall.

On April 30, 2002, SIDA adopted a resolution regarding DestiNY
USA in which, *inter alia*, the agency called for condemnation of certain

"real property interests," including the JCPenney lease provisions requiring its approval for modifications of the existing Mall.  That resolution was challenged by JCPenney in a legal proceeding commenced in the state courts, on or about May 30, 2002.  JCPenney's state court challenge was rejected by decision and order issued by the New York State Supreme Court Appellate Division, Fourth Judicial Department, on November 15, 2002, dismissing JCPenney's petition and affirming SIDA's determination and findings.[3]

On October 25, 2004 JCPenney served Hiscock & Barclay, LLP ("H&B"), SIDA's legal counsel, with a subpoena duces tecum requiring the production of documents falling within four specified categories.  *See* Letter dated May 31, 2005 (Dkt. No. 97) Exh. A; Shimomura Aff. (Dkt. No. 106) ¶ 10.  Following the issuance of that subpoena, communications ensued between plaintiff's counsel and H&B addressing certain issues including concerns voiced by H&B regarding certain documents withheld on the basis of attorney client privilege.   Shimomura Aff. (Dkt. No. 106) ¶¶ 11-14.  Despite those discussions, H&B continues to withhold from

---

[3]      An appeal filed by JCPenney from that determination was dismissed by the New York Court of Appeals on February 25, 2003, *sua sponte*.  Despite this final state court determination seemingly paving the way for commencement of condemnation proceedings, to date SIDA has not initiated that process.

production four documents, described as follows:

1.  April 24, 2002 e-mail "concerning and forwarding draft letter agreement regarding the existing PILOT Agreement" from J. Everett, Esq., of Hiscock, to R. Clapman, Esq., counsel to Pyramid, G. Faucher, Esq. counsel to Pyramid and T. Carnrike, Esq. counsel to the City of Syracuse.  ("Document 1").

2.  March 22, 2002 Memorandum regarding draft amendments to the Agency Agreement . . . from J. Everett, Esq., of Hiscock, to G. Carey, D. Tomson, and F. Mahoney, of "Underwriters", and L. Galbraith, Esq. and M. Whitaker, Esq. who are "Underwriters Counsel."  ("Document 2").

3.  April 4, 2002 "E-mail concerning legal advice regarding PILOT, Public Use Improvements and bond financing issues["] from G. DeGraff, Esq. of Hiscock, to R. Pietrafesa and M. Lorenz, of Pyramid, copied to M. Rappaport, Esq., underwriters counsel, M. Wakschlag, of Pyramid, G. Faucher, Esq., Pyramid's counsel, R. Clapham, Esq., Pyramid's counsel, L. Galbraith, underwriters counsel, J. Everett, Esq. of Hiscock, and R. McCabe., Esq. of Hiscock.  ("Document 3").

4.  March 18, 2002 "E-mail concerning legal advice regarding tax and financing issues" from G. DeGraff, Esq. of Hiscock to S. Reilly, Esq., Pyramid's counsel and M. Wakschlag, of Pyramid, copied to J. Everett, Esq. and R. McCabe, Esq. of Hiscock. ("Document 4").

McNamara Aff. (Dkt. No. 109 ¶ 12.

II.   DISCUSSION

       A.    Attorney-Client Privilege Generally

The legal principles which govern the dispute now before me,

7

though not particularly controversial, are often difficult to apply.  The

starting point for the required analysis is Rule 501 of the Federal Rules of

Evidence, which makes New York's law of attorney-client privilege

applicable to this breach of contract action, in which the court's jurisdiction

is based upon diversity of citizenship.  Fed. R. Evid. 501; *see Dixon v. 80*

*Pine Street Corp.*, 516 F.2d 1278, 1280 (2d Cir. 1975); *Gulf Islands*

*Leasing, Inc., v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y.

2003).  By statute, New York gives protection to any "confidential

communication made between the attorney or his or her employee and the

client in the course of professional employment[.]" N.Y. Civil Practice Law

& Rules ("CPLR") § 4503(a)(1).  Under this provision, which has been

characterized by the New York Court of Appeals as a "mere re-enactment

of the common-law rule", *Spectrum Sys. Int'l Corp. v. Chemical Bank*, 78

N.Y.2d 371, 377, 581 N.E.2d 1055, 1060, 575 N.Y.S.2d 809, 814 (1991)

(quoting *Hurlburt v. Hurlburt*, 128 N.Y. 420, 424, 28 N.E. 651, 652 (1891)),

attorney-client protection "extends to both confidential information

provided to the lawyer by the client and legal advice given by an attorney

that discloses such information."  *Nat'l Ed. Training Group, Inc. v. Skillsoft*

*Corp.*, No. M8-85, 1999 U.S. Dist. LEXIS 8680, at *7-*8 (S.D.N.Y. June

10, 1999) (citations omitted).

In determining whether it should apply, a court should not lose sight of the strong policy considerations which form the underpinning of the attorney-client privilege – one which is deeply rooted in our country's jurisprudence, and finds its origins in English common law.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 682 (1981) (citing 8 J. Wigmore, Evidence § 2290, at 542-43).  In fulfilling its underlying policy considerations the privilege seeks "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."  *Upjohn*, 449 U.S. at 389, 101 S. Ct. at 682.  It is generally thought that serious encroachment upon this privilege would vastly undermine the ability of an attorney to represent a client effectively, and would have a potentially chilling effect upon the candor in the flow of communications necessary for proper fulfillment of an attorney's role.  *Id.*; *see also* 24 Charles Alan Wright & Kenneth W. Graham, Jr.  Federal Practice & Procedure, Evidence § 5472 (1986 & 2003).

Despite the important and longstanding considerations supporting the privilege, it exists in obvious tension with the overarching belief that

under our system of justice, all relevant information should be disclosed and considered when a dispute is resolved.  *Spectrum Sys. Int'l Corp.*, 78 N.Y.2d at 376-77, 581 N.E.2d at 1059, 575 N.Y.S. 2d at 813.  Because the privilege serves to shield otherwise potentially relevant information, and thus runs counter to the goal of promoting full disclosure, the attorney-client privilege is narrowly construed to provide no greater protection than necessary to accomplish its desired purpose of fostering open dialogue between client and attorney.  *Nat'l Ed. Training Group, Inc.*, 1999 U.S. Dist. LEXIS 8680, at *8-*9.  As the Second Circuit has observed,

> [t]he privilege itself is an exception to the critically important duty of citizens to disclose relevant evidence in legal proceedings.  It does not shield communications which serve purposes other than those which led to judicial recognition of the privilege.

*In re John Doe Corp.*, 675 F.2d 482, 489 (2d Cir. 1982) (citation omitted).

   Before turning to analysis of the specific documents now before the court, it is also important to note – as H&B candidly acknowledges – that because the privilege shields otherwise relevant, even potentially outcome determinative, evidence from disclosure, it follows that a party seeking to invoke its protections bears the burden of establishing entitlement to a

claim of privilege, including all of the required elements associated with

such a claim.  *von Bulow v. von Bulow,* 811 F.2d 136, 144 (2d Cir.) *cert.*

*denied sub nom.*, *Reynolds v. von Bulow by Auersperg*, 481 U.S. 1015,

107 S. Ct. 1891 (1987); *Nat'l Ed. Training Group, Inc.*, 1999 U.S. Dist.

LEXIS 8680, at *8.

     B.    <u>Applicability of Attorney-Client Privilege</u>

In their briefing and argument of this matter, the parties' focus has

been upon whether, by the sharing of the documents at issue with parties

other than the client and its attorneys, there has been a waiver of the

privilege.  As a threshold matter, however, I must first determine whether

H&B has carried its burden of proving that the disputed documents

contain, or evidence, any communication between attorney and client

"made principally to assist in obtaining or providing legal advice or service

for the client."[4]  *Ross v. UKI Ltd.*, 02 Civ.9297, 2004 U.S. Dist. LEXIS 483,

at *6 (S.D.N.Y. Jan. 15, 2004) (citing *People v. Osorio*, 75 N.Y.2d 80, 84,

549 N.E.2d 1183, 1185, 50 N.Y.S.2d 612, 614 (1989)).  In making that

determination it is important not to lose sight of the fact that as the

---

    [4]    It is understandable that JCPenney has not addressed this question in light of the fact it has neither seen the four documents in issue, nor does it have any way of knowing for certain whether they contain evidence of communications between H&B and SIDA, its client.

intended beneficiary of H&B's legal services, it is SIDA that is properly

regarded as the client.  Accordingly, in order to merit protection under

New York's attorney-client privilege, the communications at issue must

reflect communications between SIDA and H&B intended for the purpose

of obtaining or rendering legal advice, unless because of the relationship

between it and SIDA, Pyramid could also properly be regarded as a client

of H&B.

It is true that under certain circumstances separate entities can be

deemed as being sufficiently aligned, and having such a close

commonality of interests, that they can collectively be viewed as a single

client.  *See*, *e.g.*, *United States v. AT&T Co.*, 86 F.R.D. 603, 616 (D.D.C.

1979) (finding that corporation which retained an attorney, its parent, and

its wholly owned and majority owned subsidiaries could be collectively

viewed as clients).  This threshold inquiry of whether multiple parties are

properly regarded, in the aggregate, as clients of a single attorney and the

subsidiary question of whether truly privileged communications between

attorney and client have lost their protection by virtue of having been

shared with a third party are two distinct issues which are often conflated,

as is evidenced in this case.  *See Bank Brussels Lambert v. Credit*

*Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 446-47 (S.D.N.Y. 1995).  When addressing the question of who is properly regarded as the client for purposes of examining the existence of scope of the privilege, in a situation such as this, the question is whether there are multiple entities sharing a common interest, such that an attorney representing one can be deemed to represent all.  *See id.*

The most elementary example of a circumstance satisfying the common interest test is presented when multiple parties share the same attorney in a litigation setting. "In that situation, communications made to the shared attorney to establish a defense strategy remain privileged as against the rest of the world." *North River Ins. Co. v. Philadelphia Reins. Corp.*, 797 F. Supp. 363, 366 (D.N.J. 1992) (citations omitted).  The doctrine becomes more strained when applied to situations where multiple entities are separately represented, either in litigation or, as in this case, where litigation has not yet commenced.

Having carefully reviewed the submissions of the parties, I find no basis to conclude that H&B should be considered as a legal representative of Pyramid, based upon the relationship between Pyramid and SIDA.  Although Pyramid and SIDA are engaged in a venture in which

13

their interests are in large part co-extensive, they are separately

represented and have on occasion negotiated between themselves on an

arms length basis, including when entering into the agreement by which

Pyramid was appointed to act as the preferred developer of the property in

question, on behalf of SIDA.  I find no evidence of sufficient commonality

of interests between Pyramid and SIDA such that H&B should properly be

regarded as representing Pyramid.  Accordingly, the attorney-client

privilege does not attach to communications between Pyramid and H&B.

*See Aetna Casualty & Surety Co. v. Certain Underwriters at Lloyd's*

*London*, 176 Misc.2d 605, 611-13, 676 N.Y.S.2d 727, 732-33 (Sup. Ct.

N.Y. Cty. Feb. 17, 1998).

Having determined that the privilege shields only documents

evidencing communications between SIDA and H&B, I next turn to a

review of the four documents in issue for evidence of such

communications for that intended purpose.  The first of the disputed

documents lacks any indicia of either legal advice or of confidential

communications.  The cover page of that document is an e-mail

communication from H&B, SIDA's counsel, to two attorneys for Pyramid

and a legal representative of the City of Syracuse.  The attachment

14

appears to reference a letter agreement between the City, SIDA and Pyramid, reflecting comments and proposed changes by Pyramid's counsel.  I therefore find that H&B has failed to sustain its burden of demonstrating confidentiality with regard to this document.

The second document in issue is a March 22, 2002 memorandum from an attorney at H&B to five underwriter representatives, two of whom are attorneys.  That document, which does not contain the attachments referenced with it, simply reflects conveyance to the recipients of the memorandum of certain attached documents, all or most of which appear to be publicly available.  As is the case with regard to the first document, this memorandum lacks any indicia of confidential legal advice or communications between H&B and SIDA made for the purpose of seeking such advice.  Accordingly, H&B has failed to sustain its burden of demonstrating that this document is a privileged communication.

The third offering now under challenge consists of an e-mail communication from an attorney at H&B to two representatives of Pyramid, with copies to underwriter's counsel, attorneys for Pyramid, and other attorneys within H&B; neither the e-mail itself nor the parties' submissions reflect receipt of the e-mail by anyone at SIDA.  Upon

reviewing this document I find that while it arguably does contain

confidential communications which would be entitled to protection under

New York's attorney-client privilege statute, absent a basis for finding

waiver, if those communications were between client and counsel, in this

instance the discussions were not between H&B and SIDA, its counsel,

but instead involved Pyramid and its underwriters.  This communication is

therefore similarly undeserving of attorney-client privilege protection.

The cover page of the fourth and final disputed document consists

of an e-mail communication from an attorney at H&B to lay person and

attorney representatives of Pyramid, with copies to other H&B counsel.

Attached to that e-mail communication is a proposed draft memorandum.

Having reviewed this document, I find that it too fails to contain potentially

confidential communications between H&B and SIDA.

Based upon my *in camera* review of the disputed documents, I find

that none of them contain, or evidence, confidential communications

between H&B and SIDA.  Accordingly, none of these documents are

entitled to protection under New York's attorney-client privilege.

C.    Waiver

Both parties to the instant dispute have concentrated their

arguments upon whether, assuming their confidentiality, the disclosure of the disputed documents to third parties, including to Pyramid and representative, of underwriters retained to assist it in connection with financing of the contemplated project, has resulted in waiver of that privilege.  Accordingly, despite having found that the documents in issue are not privileged, I will address the question of waiver as potentially providing an alternative basis for the granting of plaintiff's motion to compel production of those disputed documents.

The voluntary disclosure of an otherwise privileged communication to a third-party results in waiver of the attorney-client privilege.  *Nat'l Ed. Training Group, Inc.*, 1999 U.S. Dist. LEXIS 8680, at *10.  This principle is subject to a narrow exception which applies when a privileged communication is shared with an agent of the client.  *Id.*  While a finding of the existence of an attorney-client relationship between the attorney and the third-party is not necessary in order to support this exception, the requirements for a finding of waiver on this basis are stringent, and require the party resisting disclosure of the communication at issue to establish two elements, including that 1) the client had a "reasonable expectation of confidentiality under the circumstances", *Nat'l Ed. Training Group, Inc.*,

17

1999 U.S. Dist. LEXIS 8680, at * 11 (quoting *Osorio*, 75 N.Y.2d at 84, 549 N.E.2d at 1186, 550 N.Y.S.2d at 615); and 2) disclosure to the third-party "was necessary for the client to obtain informed legal advice". *Id., at *12*; *see also Ross,* 2004 U.S. Dist. LEXIS 483, at *8-*9 (citing, *inter alia*, *Nat'l Education Training Group*).  "Though a formal agency relationship is not required, the relationship between the client and the third party must be sufficiently close that the client's subjective expectation of confidentiality is reasonable." *Id.*

The narrowness of the agency exception to waiver is illustrated by the unique circumstances under which it has been invoked in other cases. The exception has been recognized, for example, where confidential communications have been shared with interpreters retained to facilitate communications between attorney and client.  *See*, *e.g.*, *Oxyn Telecomm., Inc. v. Onse Telecom*, No. 01 CIV. 1012, 2003 WL 660848, at *2 (S.D.N.Y. Feb. 27, 2003).  Somewhat analogously, waiver does not apply when confidential communications are shared with an accountant retained to assist in clarifying and improving comprehension of communications between attorney and client.  *See United States v. Kovel*, 296 F.2d 918, 920-22 (2d Cir. 1961).  In a similar vein, a court in New

18

York has invoked the exception in a case where "an aged woman [was] required to recall, and perhaps relive, what was probably the most traumatic experience of her life" justifying the presence of the woman's daughter during discussions of the accident with the woman's attorneys. *See Stroh v. General Motors Corp.*, 213 A.D.2d 267, 268, 623 N.Y.S.2d 873, 874 (1st Dept. 1995).

It is against this backdrop that the arguments of H&B, which urges invocation of this exception, must be analyzed.  It is true, as defendant maintains, that one of the agreements between defendant and SIDA designates Pyramid as SIDA's agent; the scope of that agency relationship is described as authorizing Pyramid, on behalf of SIDA, to

> (i)     acquire the Public Improvement Land and to undertake the Public Improvements;
>
> (ii)    undertake the Carousel Expansion, with the power to appoint sub-agents; and
>
> (ii)    make, execute, acknowledge and deliver any contracts, orders, receipts, writings and instructions, as the stated agent of SIDA, and in general to do all things which may be requisite or proper for completing the Public Improvements in accordance with the Approved Plans and Specifications or the Carousel Expansion, all with the same powers and the same validity as if SIDA were acting on its own behalf.

McNamara Aff. (Dkt. No. 109) Exh. A § 2.04; *see also id.* § 1.03(B) ("SIDA
has appointed [Pyramid] as its agent to undertake the Carousel Expansion
and the Public Improvements as herein provided[.]").

Only one of the four challenged documents – the March 18, 2002 e-
mail regarding legal advice on tax and financing matters – was limited in
its apparent distribution to SIDA and Pyramid.  For purposes of that
document, the first prong of the two part test has been met, based upon
the closeness of the relationship and SIDA's appointment of Pyramid as
its agent for purposes of the planned mall expansion.

The three remaining documents have been disclosed further, two of
them having been distributed to designated underwriters and/or their
counsel, including the March 22, 2002 memorandum and April 4, 2002 e-
mail, and the fourth – the April 24, 2002 e-mail – was shared with counsel
for the City of Syracuse.  From the information now before the court, it
appears that the underwriter at issue was retained by Pyramid to assist in
connection with the issuance of revenue bonds contemplated by SIDA to
finance the cost of the Pyramid expansion.  *See* Shimomura Letter dated
May 31, 2005 (Dkt. No. 97) Exh. G, at 2.  H&B has failed to carry its
burden of demonstrating that the disclosure of purportedly confidential

materials to the underwriter, a third party engaged to provide advice in connection with the issuance of bonds, occurred under circumstances giving rise to a reasonable expectation of confidentiality on the part of SIDA and its counsel.

The record now before the court fails to disclose the precise relationship between the City of Syracuse and SIDA.  While undoubtedly the two share common interests and are closely aligned, they remain separate municipal entities.  With little or no further information regarding their relationship before me, I find that H&B has failed to sustain its burden of proving that it had a reasonable expectation of privacy in sharing allegedly privileged documents with representatives of the City. *See Gulf Islands Leasing, Inc.*, 215 F.R.D. at 474 ("The mere existence of an affiliate relationship does not excuse a party from demonstrating the applicability of the common interest rule").

The focus of the second prong of the agency exception test is upon the necessity of the sharing of the communication with a third party in order to obtain informed legal advice.  *Ross*, 2004 U.S. Dist. LEXIS 483, at *9; *Nat'l Ed. Training Group*, 1999 U.S. Dist. LEXIS 8680, at *12.  "[T]he 'necessity' element means more than just useful and convenient, but

rather requires that the involvement of the third party be nearly indispensable or serve some specialized purpose in facilitating the attorney-client communications." *Nat'l Ed.Training Group,* 1999 U.S. Dist. LEXIS 8680, at \*12-\*13.  The purpose of the third party's participation must be to "clarify communications between attorney and client." *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999); *see also Kovel*, 296 F.2d at 922.

Having reviewed the disputed documents *in camera* and considered the arguments of counsel, I am unable to conclude that H&B has shouldered its burden of establishing the necessity of sharing the disputed materials with Pyramid, the City of Syracuse, and bond underwriters for the purpose of facilitating informed legal advice between counsel and SIDA, as the client.  Accordingly, I find that the second prong of the waiver exception does not apply and, as such, the four documents in issue, even assuming that they were privileged, lost that protection upon being shared with third parties, including Pyramid, the City of Syracuse, and bond underwriters.

## III.    SUMMARY AND CONCLUSION

The attorney-client privilege, though crucial in fostering the free

exchange of communications between counsel and client, represents a departure from the general rule, upon which our judicial system operates, that the ends of justice are best served by full disclosure of all available and potentially relevant evidence.  Consequently, the attorney-client privilege is subject to narrow construction and is waived through the disclosure of confidential communications to third parties except under the narrowest of circumstances.  Because I find that the documents at issue are not privileged, and in any event were shared with third parties under circumstances giving rise to a waiver of the privilege, they are subject to disclosure.

Based upon the foregoing it is hereby

ORDERED, that plaintiff's application (Dkt. No. 106) for enforcement of its subpoena and the production of the four disputed documents, as set forth above, is GRANTED, and the cross-motion (Dkt. No. 109) of Hiscock & Barclay, LLP, the subpoenaed party, for a protective order shielding the disputed documents from production is DENIED; and it is further hereby

ORDERED that within thirty (30) days of the date of this decision or, if an appeal is taken, determination of that appeal, H&B shall produce to the plaintiff for inspection and, if desired, for photocopying, at plaintiff's

expense, the four documents at issue in this motion.

Dated:      August 16, 2005
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\Civil\2002\02-CV-1360\order3.wpd

24