UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

J.C. PENNEY CORPORATION, INC.,

                            **Plaintiff,**

                   v.                                    5:02-CV-1360
                                                              (FJS/DEP)

CAROUSEL CENTER COMPANY, L.P.,

                            **Defendant.**
_____

**APPEARANCES**                                       **OF COUNSEL**

**HARTER, SECREST & EMERY**          **EDWARD F. PREMO, II, ESQ.**
1600 Bausch & Lomb Place               **KIMBERLY I. SHIMOMURA, ESQ.**
Rochester, New York 14604
Attorneys for Plaintiff

**J.C. PENNEY CORPORATION, INC.**    **CELESTE D. FLIPPEN, ESQ.**
6501 Legacy Drive
Plano, Texas 75024-3698
Attorneys for Plaintiff

**GILBERTI, STINZIANO, HEINTZ &**    **TIMOTHY J. LAMBRECHT, ESQ.**
**SMITH**                                              **WILLIAM J. GILBERTI, ESQ.**
555 East Genesee Street
Syracuse, New York 13202-2519
Attorneys for Defendant

**COSTELLO COONEY & FEARON, PLLC**  **ROBERT J. SMITH, ESQ.**
205 South Salina Street
Syracuse, New York 13202
Attorneys for Defendant


**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendant's motion for reconsideration, pursuant to Rule 59(e), of Judge Munson's January 24, 2008 Order which, among other things, denied Defendant's motion for summary judgment. Defendant contends that the Court should reconsider Judge Munson's denial of summary judgment because (1) there is new evidence and a change in circumstance which favor dismissal, and (2) the Court made clear error of law in its decision.

**II. BACKGROUND[1]**

Carousel Center Company, L.P. ("Defendant") is a limited partnership; its limited partner is Pyramid Company of Onondaga ("Pyramid"), which owns 98% of Defendant. Defendant's general partner is Carousel General Company, L.L.C., which owns 2% of Defendant. At the center of this lawsuit is the Carousel Mall ("the Mall"), which Defendant operates under a 1995 assignment from Pyramid, the Mall's builder. Pyramid, either directly or through affiliates, owns or controls Defendant.

On January 10, 1990, Plaintiff entered into a lease agreement with Pyramid. This agreement went through amendments and/or supplements and evolved into a Second Amended Lease, dated August 30, 1995. Subsequently, Defendant became the successor-in-interest to the rights and obligations of Pyramid under the lease. This lease contained Consent Provisions whereby the Mall was not to be changed or altered without Plaintiff's consent.

---

[1] Except as where otherwise indicated, "Background" facts are the same as those that the Court set out in its prior decision in *J.C. Penn[e]y Corp. v. Carousel Center Co., L.P.*, 306 F. Supp. 2d 274 (N.D.N.Y. 2004).

In May 2000, Pyramid requested the Syracuse Industrial Development Agency's ("SIDA") assistance in constructing the DestiNY USA project ("DestiNY USA" or "the Project"). On April 30, 2002, SIDA adopted its Resolution pursuant to § 204 of the New York State Eminent Domain Procedure Law ("EDPL"), making the determinations and findings required to authorize the acquisition of certain interests in the Mall for the construction of the Project, including any provision of a tenant's lease which might restrict or impede the development of the Project. The provision states that

> the Company [Pyramid] has requested that the Agency [SIDA] acquire certain real property interests in or effecting Existing Center Land within the existing Carousel Center to the extent necessary or appropriate to construct the proposed modifications to Carousel Center necessary or appropriate to transform it into the DestiNY USA Project ('Carousel Center Interests').

Exhibit 1 to the Resolution defines "Carousel Center Interests" to include,

> among others, interests of some or all of the tenants in varying degrees created by leases or agreements that may establish restrictions on: the use of the lands surrounding the mall building; the use of space within the mall building that are inconsistent with DestiNY USA Project designs; the use of common interior areas within the mall building; visibility and/or signage; the name of the project; and any other applicable interests that may exist.

The Resolution further provides that

> the Company [Pyramid] agrees to indemnify, defend and hold harmless . . . the Agency [SIDA] . . . from any Claims (as defined in the Agency Agreement) imposed . . . or incurred . . . or asserted . . . by reason of or arising from the institution, prosecution or abandonment of any eminent domain proceedings . . . with respect to any of the Land or the Public Improvement Land (including the Existing Center Land). . . .

In May 2002, Plaintiff instituted an original proceeding in the New York State Supreme

Court, Appellate Division, Fourth Department, under EDPL § 207, asking that the court reject SIDA's Resolution and Determinations and Findings.[2]

At the hearing before the Appellate Division, Defendant maintained that the tenant's interests created by the lease (hereinafter referred to as the "Consent Provisions") were real property interests subject to the State's eminent domain power. In opposition, Plaintiff contended that the Consent Provisions of the Lease were not "real property" within the meaning of the EDPL. On November 15, 2002, the Appellate Division confirmed SIDA's Resolution and Determination and Findings, held that the Consent Provisions were interests in real property subject to condemnation by SIDA, and dismissed Plaintiff's petition. *See Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency*, 301 A.D.2d 292, 299-300 (4th Dep't 2002). Plaintiff sought leave to appeal to the Court of Appeals, which that Court denied on February 25, 2003. *See Kaufmann's Carousel, Inc. v. City of Syracuse Indus. Dev. Agency*, 99 N.Y.2d 508 (2003).

Plaintiff filed the present action on October 24, 2002. *See* Dkt. No. 1. In its amended complaint, Plaintiff seeks (1) an injunction preventing Defendant from proceeding with the construction of the Project and from procuring and/or paying for the proposed condemnation by SIDA, and (2) damages for breach of the express and implied terms of the Contract. *See* Dkt. No. 13 at ¶¶ at 41-59.

On November 30, 2005, both Plaintiff and Defendant cross-moved for summary judgment. Defendant asserted that (1) it had not breached the express or implied terms of the lease because no construction had yet occurred; (2) Plaintiff cannot recover under the theory that Defendant induced

---

[2] This type of action is a limited special proceeding that can only be brought originally in the Appellate Division. It is not brought as a plenary action in a court of general jurisdiction.

SIDA to condemn the Consent Provisions; (3) Plaintiff seeks the wrong measure of money damages; and (4) Plaintiff is not entitled to injunctive relief. *See* Dkt. No. 213-3.

On December 29, 2005, SIDA commenced a proceeding to condemn the Consent Provisions and on March 29, 2006, the New York State Supreme Court, Onondaga County, granted the petition and authorized SIDA to procure these interests. *See* Affirmation of Timothy J. Lambrecht, dated February 4, 2008 ("Lambrecht Aff."), at ¶ 9 and Exhibit "A" annexed thereto. On September 29, 2006, the Appellate Division, Fourth Department, upheld the Order of Condemnation. *See id.* at ¶ 10 and Exhibit "B" annexed thereto. On October 24, 2006, the Court of Appeals denied leave to appeal. *See id.* and Exhibit "C" annexed thereto.

On January 24, 2008, Judge Munson denied all motions then pending before the Court, including the parties' cross-motions for summary judgment. *See* Dkt. No. 246. In denying the cross-motions for summary judgment, the Court stated that, because the parties' versions of events differed substantially, there were material issues of fact which made summary judgment inappropriate. The Court did not provide any further discussion of the merits of either party's legal arguments.

On February 4, 2008, Defendant filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 7.1(g) on the grounds that (1) there is new evidence which was not previously available to the Court which mooted Plaintiff's claim for injunctive relief, and (2) the Court's January 24, 2008 Order was a clear error of law. *See* Lambrecht Aff. at ¶ 2.

### III. Discussion

As to its first ground for reconsideration, Defendant asserts that the change in Plaintiff's

status requires the Court to reconsider its January 24, 2008 Order. *See* Defendant's Memorandum of Law at 4. At the time the parties filed their cross-motions for summary judgment, SIDA had not yet acquired Plaintiff's Carousel Center Interests, which include the Consent Provisions. *See id.* This condemnation has since happened, and the Appellate Division, Fourth Department, upheld the decision allowing SIDA to acquire these rights. *See id.*; *City of Syracuse Indus. Dev. Agency v. J.C. Penney Corp., Inc.*, 32 A.D.3d 1332 (4th Dep't 2006). As such, because Plaintiff no longer has any possessory interest in the Consent Provisions, Plaintiff no longer has standing and its claim for injunctive relief is now moot. *See id.* at 5 (citing *Funds for Animals v. Babbitt*, 89 F.3d 128, 132-33 (2d Cir. 1996) (citation omitted)).

As to its second ground for reconsideration, Defendant maintains that the Court committed plain error of law in denying its motion for summary judgment by "overlooking the holding in *Dolman v. United States Trust Co. of New York*, 2 N.Y.2d 110, 115 (1956)." *See id.* at 6-7. Defendant asserts that *Dolman* makes clear that, under New York law, a landlord is not liable for breach of the lease if a government exercises its power of eminent domain, even if the landlord induced the government into taking the action. *See id.* at 7 (citing *Dolman v. United States Trust Co. of New York*, 2 N.Y.2d 110, 115 (1956)). Therefore, Plaintiff cannot seek damages or injunctive relief based upon a claim of inducement.

### A.     Motion for reconsideration standard[3]

Defendant asked the Court to reconsider its Order denying its second motion for summary

---

[3] The Court notes that, although Defendant brought this motion under Rule 59(e) of the Federal Rules of Civil Procedure, Rule 59(e) does not apply because the Court has not entered a final judgment in this case.

judgment pursuant to Rule 59(e).  Although Rule 59(e) does not provide for the review of interlocutory orders, "[a] district court has the inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment . . . ."  *United States v. LoRusso*, 695 F.2d 45, 53 (2d Cir. 1982) (citations omitted).

Reconsideration of a court's order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.  *See Stewart Park & Res. Coalition, Inc. v. Slater*, 374 F. Supp. 2d 243, 253 (N.D.N.Y. 2005) (citation omitted).  A court may reconsider its previous ruling if (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice.  *See id.* (quotation and other citation omitted).

**B.     New evidence resulting in mootness**

"'Typically, the doctrine of mootness is invoked where a change in circumstances prevents a court from rendering a decision that would effectively determine an actual controversy.'" *Citineighbors Coalition of Historic Carnegie Hill v. N.Y.C. Landmarks Pres. Comm'n*, 2 N.Y.3d 727, 728-29 (2004) (quotation omitted).

Plaintiff's first cause of action, in its amended complaint, seeks to enjoin Defendant from both proceeding with the construction of Destiny USA and the mall expansion, as well as an injunction that would enjoin Defendant from procuring, assisting, or paying for SIDA's condemnation.  *See* Amended Complaint at ¶ 50.  Although Defendant was bound by the terms of the Consent Provisions while those Provisions were a part of the Contract, after the order of condemnation, the Consent Provisions were effectively removed from the Contract; and Plaintiff is

without standing to enforce them since title to those Provisions now rests with SIDA. Thus, Plaintiff's claim for injunctive relief seeking their enforcement must fail.[4]

Therefore, the Court dismisses Plaintiff's first cause of action for injunctive relief as moot.

**C.    Plaintiff's claim for breach of contract based on inducement**

Defendant asserts that the Court committed clear error when it failed to apply the New York Court of Appeals' decision in *Dolman v. United States Trust Co. of N.Y.*, 2 N.Y.2d 110 (1956).[5] Defendant claims that this case makes clear that, under New York law, Plaintiff's inducement claim fails to state a claim for which the Court can grant relief.

In *Dolman*, the plaintiff "claimed that the landlord breached the covenant [of quiet enjoyment] by its inducement of and co-operation in the condemnation of the leased premises by the City of New York, resulting in the eviction of the plaintiff at the end of two years of the five-year term of the lease." *Dolman*, 2 N.Y.2d at 112.  After the expiration of the plaintiff's first lease, the defendant began negotiations with the City for it to purchase the defendant's property. *See id.* When negotiations between the City and the defendant "broke off," the plaintiff, with the knowledge of the foregoing negotiations, entered into a new lease with the defendant. *See id.*

Thereafter, the City again expressed interest in the property, but only if it was free of any

---

[4] Furthermore, since the condemnation proceedings have been completed, there is no relief that the Court can grant. "The occurrence of the action sought to be enjoined normally moots the request for preliminary injunctive relief because this Court has '"no effective relief to offer"' once the action has occurred." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting [*Knaust v. City of Kingston*, 157 F.3d 86,] 88 [(2d Cir. 1998)]).

[5] As both parties noted, Defendant cited to *Dolman* in its motion for summary judgment, which it now asks the Court to reconsider. Although Defendant cited *Dolman* in its motion papers, there is no indication that the Court considered that case in its previous Order.

incumbrances. *See id.* To accomplish this, the City proposed an agreement whereby the defendant would give it an option to purchase any condemnation award to which the defendant would be entitled upon condemnation. *See id.* Under this agreement, title vested in the City in April of 1954; and, later that same month, the Supreme Court granted the condemnation order. *See id.* at 113-14.

Similar to the case at bar, the lease contained a clause which granted the defendant the right to terminate the lease, should the property be "demised." *See id.* at 112-13. As with the present case, the new lease also contained a quiet enjoyment clause, which warranted that the plaintiff shall quietly "'have, hold and enjoy the said demised premises for the term aforesaid.'" *Id.* at 113 (quotation omitted).

The plaintiff filed suit alleging that "'[t]he defendant wrongfully induced the City of New York to acquire the premises by condemnation in violation of the covenant of quiet enjoyment contained in the lease between the plaintiff and the defendant.'" *Id.* at 114 (quotation omitted). The Court of Appeals held that

> [a] covenant of quiet enjoyment is not breached by the landlord when the tenant is evicted by the sovereign's exercise of its power to take by eminent domain, inasmuch as such a covenant goes only to the lessor's title, and does not warrant against those fundamental liabilities to action on the part of the sovereign power which lie behind all private titles (*see Goodyear Shoe Mach. Co. v. Boston Term. Co.,* 176 Mass. 115, per Holmes, Ch. J.). The rights of the lessee in the land owned by the lessor are held as the property of all citizens is held, subject to the exercise of the power of eminent domain by the sovereign and the exercise of that power by the sovereign does not constitute a breach of the covenant of quiet enjoyment by the landlord (*see Kip v. New York & H. R. R. Co.,* 67 N. Y. 227, 229).

*Id.*

The court went on to note that the defendant did "cooperate" with the City, in that it placed

the City in a position to know, in advance, the cost of acquiring the defendant's property by eminent domain. *See id.* at 115.

> However, before holding that that type of co-operation creates an exception, in favor of the tenant, to the rule that an eviction resulting from the exercise of the sovereign power of eminent domain does not render a landlord liable for a breach of the covenant of quiet enjoyment, we would have to find some clear expression of intention to that effect in the lease.

*Id.* The court found that there was no such clear expression in the lease, which expressly contemplated this result by providing for the respective rights of the parties in the event of condemnation by the sovereign. *See id.* at 116-17.

Despite Plaintiff's assertions, it is clear that New York does not recognize an action against a landlord when the government exercises its eminent domain powers. As discussed above, the Court of Appeals in *Dolman* made clear that no action will lie when the sovereign exercises its eminent domain rights, regardless of the participation of the landlord, unless the parties clearly state in the lease that the landlord will be liable for such inducement. *See Dolman*, 2 N.Y.2d at 114.

Here, as in *Dolman*, the parties' lease contains a provision which provides certain rights in the event of a condemnation. *See* Amended Complaint at Exhibit "A" at 47-49. This provision does not prohibit Defendant from inducing the government to condemn any or all of the lease; it merely provides Plaintiff's remedy in the event a condemnation occurs. *See id.* In light of *Dolman's* explicit holding, the Court finds that its previous decision was in clear error of law and, therefore, grants Defendant's motion for summary judgment on this claim.[6]

---

[6] Plaintiff, alternatively, asserts that Defendant's actions were a breach of the implied covenant of good faith and fair dealing. At the outset, the Court notes that, under New York law,
(continued...)

**D.    Plaintiff's claim for damages for the conduct of Defendant prior to the condemnation order**

In Plaintiff's lease, Section (b) of the article entitled "Additional Covenants of Landlord" provides as follows:

> Without the prior approval of Tenant there shall not be constructed within any part of the Entire Premises (1) any facilities for the parking of motor vehicles other than at ground level in the locations shown therefor on Exhibit B hereto; (2) any building or structure except within the areas shown on said Exhibit B; or (3) any improvements, or any replacements of, or any alterations or additions to, existing improvements which do not conform in general exterior architectural treatment (including the appearance of construction material used) to the other portions of the Shopping Center or, in the case of the replacement of an improvement, to the improvement which is being replaced.

---

⁶(...continued)
a claim for breach of the implied covenant of good faith and fair dealing does not provide a cause of action separate from a breach-of-contract claim. "'[P]arties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract.'" *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (quoting *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir. 1992)). This implied obligation is in aid and furtherance of other terms of the agreement and no obligation can be implied which would be inconsistent with other terms of the contract. *See Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983). Therefore, "[a] claim for breach of the implied covenant 'will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.'" *I.C.D. Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997) (quotation and other citation omitted); *see also Jacobs Private Equity, LLC v. 450 Park LLC*, 22 A.D.3d 347, 347-48 (1st Dep't 2005) (citation omitted).

The parties should note that, in its 2004 Order, the Court already addressed this point of law. The Court held that "no difference is apparent in the factual underpinnings of plaintiff's breach of contract claims and its claim for breach of the implied covenant of good faith and fair dealing. The court finds that this claim is duplicative of plaintiff's breach of contract claim, and wholly subsumed within those claims." *J.C. Penn[e]y Corp., Inc. v. Carousel Ctr. Co., L.P.*, 306 F. Supp. 2d 274, 281 (N.D.N.Y. 2004).

-11-

*See* Amended Complaint at Exhibit "A" at 45.

Plaintiff contends that Defendant breached the Consent Provisions, starting in the beginning of 2002, either directly or through its controlling affiliate, Pyramid, or through other Pyramid controlled entities. *See* Plaintiff's Memorandum of Law at 4 (citations omitted). Plaintiff alleges that Defendant breached this provision by obtaining building permits from the City, fencing off mall parking areas, driving steel piles into the parking lots, holding a groundbreaking ceremony for public marketing purposes, ordering $15 million dollars worth of steel and stacking it in the mall parking lots, and other related activities to advance the project. *See id.*

Defendant asserts that it has not breached the Consent Provisions of the lease. *See* Defendant's Memorandum of Law at 5. It claims that, at the time it filed its motion for summary judgment, no construction had occurred within the commonly understood meaning of that term. *See id.* at 8.[7]

It is clear that, once the New York Supreme Court issued its condemnation order of March 29, 2006, Defendant could no longer be in breach of the Consent Provisions as those provisions were no longer a part of the lease. What is unclear, however, is whether the "preparatory" activities, that Defendant caused to occur or allowed to occur on its property, constituted "construction" within the meaning of the lease. *See J.C. Penn[e]y Corp., Inc.*, 306 F. Supp. 2d at 281 (noting that the Consent Provisions are still in effect until after a successful EDPL proceeding; and thus it is possible that these terms could have been breached). Accordingly, because there are issues of fact about what occurred prior to the conclusion of the EDPL proceedings, the Court did not err in

---

[7] The lease does not define the term "construction;" and, therefore, it is appropriate to rely on the commonly understood meaning of the word.

denying Defendant's motion for summary judgment insofar as it relates to Plaintiff's claim for damages for the breach of the Consent Provisions prior to the date of their condemnation.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for reconsideration is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's first cause of action for injunctive relief is **DISMISSED** as **MOOT**; and the Court further

**ORDERS** that Plaintiff's second cause of action for money damages insofar as it relates to Defendant's inducement of the condemnation and for Defendant's alleged breach of the Consent Provisions **after the condemnation order** is **DISMISSED** for failure to state a claim;[8] and the Court further

---

[8] As a result of this Order, Plaintiff's only surviving claim is for damages for any breach of the Consent Provisions that occurred prior to the condemnation order.

**ORDERS** that Plaintiff's counsel is to initiate a telephone conference, using a professional conferencing service, with the Court and opposing Counsel at 8:30 a.m., on October 14, 2009, to set a trial date for this matter.

**IT IS SO ORDERED.**

Dated: October 5, 2009
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                        Senior United States District Court Judge